**UNITED STATES of America**

v.

**Sherman WASHINGTON, Jr.**

**Crim. No. 85–155.**

United States District Court, E.D. Pennsylvania.

June 21, 1985.

**2.** The *Cramer* decision involved a plaintiff who was a "prevailing party".

Linda Dale Hoffa, Asst. U.S. Atty., for Government.

Mark Schaffer, Philadelphia, Pa., for defendant.

## MEMORANDUM OF DECISION

SHAPIRO, District Judge.

On April 24, 1985, a federal grand jury in this district indicted defendant Sherman Washington, Jr. on one count of transportation of stolen property (18 U.S.C. §§ 2314 and 2(b)) and two counts of bank larceny (18 U.S.C. § 2113(b)). Defendant moved this court to suppress incriminating statements concerning his alleged role in this bank larceny scheme that he admittedly made to an Assistant United States Attorney ("AUSA") and FBI agent at a meeting held on November 15, 1984. Defendant argued that his statements were made in the course of plea discussions and are therefore inadmissible at trial under both Fed.R.Crim.P. 11(e)(6) and Fed.R.Evid. 410. The Government opposed this motion.

On June 13, 1985, this court held an evidentiary hearing on defendant's *in limine* motion. Defendant testified on his behalf, and the Government called FBI Special Agent John Kundts. After considering the evidence presented, credibility of the witnesses, arguments of counsel, and applicable law, this court granted defendant's motion on June 13, 1985. This Memorandum states the reasons for the court's action.

Certain of the relevant facts were
not in dispute:

For some time prior to November 15, 1984, a federal grand jury was investigating defendant for bank larceny and the interstate transportation of a stolen check. Defendant and his attorney were aware of this investigation.

During August, 1984, Agent Kundts was at a branch of the Philadelphia National Bank in the course of this investigation. Agent Kundts had not arranged a meeting with the defendant but observed defendant enter the bank; he recognized the defendant from his picture. Agent Kundts asked defendant if he were willing to speak with him about this matter. Defendant responded that he had an attorney and refused to answer questions without his attorney's advice; he provided Agent Kundts with the name and telephone number of his attorney.

Shortly thereafter, defendant's attorney called Agent Kundts. Agent Kundts said he would notify defense counsel when an AUSA had been assigned to this investigation. After being informed of the identity of the AUSA and prior to November 15, 1984, defense counsel requested that the AUSA meet with him and his client. The first time defendant and his attorney tried to see this AUSA she was otherwise occupied.

On November 15, 1984, defendant, his attorney, Agent Kundts, and the AUSA met in the United States Attorney's Office.[1] Defendant was not then under arrest, had not been indicted, and was not in custody. The AUSA but not Agent Kundts took notes for the Government during this meeting; Agent Kundts stated that generally only one Government representative took notes at such meetings so that "they [the two sets of notes] won't disagree." It is unknown whether defendant or defense counsel took any notes.

Both the Government and the defense agreed on most aspects of the November 15, 1984 meeting. They agreed that defendant was not in custody, spoke voluntarily, explained his version of the facts, and offered to cooperate with the Government in its investigation of another person allegedly involved in the scheme to transport stolen securities by wearing a concealed electronic device to record conversations and testifying. They also agreed that defendant was not told that any statements he made could be used against him nor was he tendered a proffer letter.

But they disagreed on other aspects of the meeting. Agent Kundts testified that without being asked, defendant began by explaining his version of events relevant to the investigation, expressed no interest in pleading to a misdemeanor charge and never requested immunity. Agent Kundts also testified that only after defendant completed his version of events did the Government explore his willingness to cooperate and to "wear a wire."

Defendant stated that he came to the meeting voluntarily to bargain for immunity and negotiate a plea but the conversation began with either the AUSA or Agent Kundts questioning him. Defendant also testified that he maintained his innocence throughout the meeting even though he was willing to plead guilty to a lesser offense. He testified that his purpose in giving information to the Government was to persuade the prosecutor to cease investigating him, grant him immunity, or indict him for a misdemeanor rather than a felony. It is unclear whether defendant testified this was his subjective intent on November 15, 1984 or if he maintained that he stated this intention at the November 15, 1984 meeting. Defendant conceded that the Government did not promise him immunity and that the possibility of charging

---

1. During the evidentiary hearing, there was disagreement over whether a fifth person, a high school student observing the United States Attorney's Office as part of a school project, was present at this meeting; the dispute was resolved when all agreed that this student was present at a subsequent meeting.

him with a misdemeanor was not discussed.[2]

The AUSA's notes from the meeting first recorded defendant's description of events and his stated willingness "to wear wire and testify." (G–1). The notes then record that defendant, his attorney, Agent Kundts and the AUSA "will meet Tuesday to discuss deal" and that defendant was promised nothing in return for his offer of cooperation as of that date (November 15, 1984).

The follow-up meeting was held as scheduled (presumably November 20, 1984); on November 29, 1984, the AUSA mailed defense counsel a proposed plea bargain. It contemplated that defendant would plead guilty to an information charging two counts of bank larceny in exchange for his agreement to tell all he knew about the matters under investigation, testify on those matters and submit to a polygraph examination if requested by the Government. This proposed agreement was neither formally rejected nor accepted by defendant.

Agent Kundts testified without contradiction that he did not file the usual FBI Form 302 investigatory report after the November 15, 1984 meeting. On April 2, 1985, the AUSA asked Agent Kundts to "memorialize" her notes of the meeting in a Form 302 report to be used by the Government in preparing for presentation of the case to a grand jury. Between April 2 and April 5, 1985, Agent Kundts and the AUSA met to review the AUSA's notes and refresh his recollection of the November 15, 1984 meeting. On April 5, 1985, Agent Kundts dictated his report of the meeting and these notes were transcribed on April 8, 1985. The grand jury's three-count indictment against defendant was returned on April 24, 1985.

The Form 302 Report (G–2) differed from the AUSA's notes in several aspects: 1) the AUSA's notes stated, "defendant gave the following statement, voluntarily—" and then summarized defendant's statement of events. Form 302 stated, "Washington began the interview by stating that he was providing the following information voluntarily" and then summarized defendant's description of events; 2) when discussing cooperation, the AUSA's notes said, "defendant says he [is] willing to wear wire and testify;" Agent Kundts' Report referred more generally to Washington's willingness "to assist the Government in this matter;" 3) the AUSA's notes stated that the meeting to be held the following Tuesday was "to discuss deal," while Agent Kundts' Report noted that the purpose of the meeting was "to discuss a possible plea agreement."

Federal Rule of Criminal Procedure 11(e)(6) provides that any statement made in connection with an offer to plead guilty is inadmissible against the accused in any civil or criminal proceeding:

**(6) Inadmissibility of Pleas, Plea Discussions, and Related Statements.**
Except as otherwise provided in this paragraph, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:

\*　　\*　　\*　　\*　　\*　　\*

(D) *any statement made in the course of plea discussions with an attorney for the government* which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

However, such a statement is admissible (i) in any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it, or (ii) in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record, and in the presence of counsel.

---

**2.** Neither the AUSA nor defense counsel testified as to their recollections of the meeting.

Fed.R.Crim.P. 11(e)(6), as amended 1980, (emphasis added).[3]

■ Where it applies, Rule 11(e)(6) is a "per se rule" of inadmissibility, *see* Advisory Committee Notes on 1979 Amendment. Therefore, the issue is whether the November 15, 1984 meeting was a privileged plea discussion. Once defendant properly raises the issue, the Government bears the burden of proving that the discussion was not a plea negotiation. The Government's burden of proof is by the preponderance of the evidence. *See United States v. Robertson,* 582 F.2d 1356, 1366 n. 21 (5th Cir.1978) (en banc); *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972) (prosecution must establish the admissibility of a confession by at least a preponderance of the evidence).

The Court of Appeals for the Fifth Circuit in *Robertson* considered the admissibility of statements made by a defendant under Rule 11(e)(6) as it existed in 1978. Former Rule 11(e)(6) held inadmissible "statements made in connection with, and related to" a guilty plea or "an offer to plead guilty," and did not limit admissibility to plea discussions with a Government attorney.[4] The court held that the defendant's post-arrest parking lot conversation with Drug Enforcement Administration agents was only an attempt to arrange a "confession bargain" and not a protected plea negotiation.[5] The court articulated this test to determine whether the defendant's statements were protected under Rule 11(e)(6):

> To determine whether a discussion should be characterized as a plea negotiation and as inadmissible, the trial court should carefully consider the totality of the circumstances.... The trial court must apply a two-tiered analysis and determine, first, whether the accused exhibited an acutal subjective expectation to negotiate a plea at the time of the discussion, and, second, whether the accused's expectation was reasonable given

---

**3.** Federal Rule of Evidence 410(3) and (4) conforms to Fed.R.Crim.P. 11(e)(6):

**Rule 410. Inadmissibility of Pleas, Plea Discussions, and Related Statements.**
Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:

\* \* \* \* \* \*

(3) any statement made in the course of any proceedings under Rule 11 of the Federal Rules of Criminal Procedure or comparable state procedure regarding either of the foregoing pleas; or
(4) any statement made in the course of plea discussions with any attorney for the prosecuting authority which do not result in a plea of guilty or which reuslt in a plea of guilty later withdrawn.
However, such a statement is admissible (i) in any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it, or (ii) in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record and in the presence of counsel.
Fed.R.Evid. 410, as amended 1980. This Opinion will hereafter refer only to Fed.R.Crim.P. 11(e)(6).

**4.** In 1978, Fed.R.Crim.P. 11(e)(6) provided:
Inadmissibility of Pleas, Offers of Pleas and Related Statements. Except as otherwise provided in this paragraph, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with, and related to, any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer. However, evidence of a statement made in connection with, and relevant to, a plea of guilty, later withdrawn, a plea of nolo contendere, or an offer to plead guilty or nolo contendere to the crime charged or any other crime, is admissible in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record, and in the presence of counsel.

**5.** Therefore, the court did not find it necessary to decide if defendant was precluded from raising a defense under Rule 11(e)(6) for the first time on appeal. The court also mentioned as significant that defendant sought concessions for his "lady friend" rather than himself. 582 F.2d at 1364 n. 17, 1369–71.

the totality of the objective circumstances."

582 F.2d at 1366.

Since *Robertson,* several courts have used this test to determine whether a defendant who has made incriminating admissions had an actual and reasonable expectation that he was engaging in protected plea discussions. *See, e.g., United States v. Grant,* 622 F.2d 308 (8th Cir.1980); *United States v. Pantohan,* 602 F.2d 855 (9th Cir. 1979); *United States v. Geders,* 566 F.2d 1227, *reh'g en banc,* 585 F.2d 1303 (5th Cir.), *cert. denied,* 441 U.S. 922, 99 S.Ct. 2031, 60 L.Ed.2d 396 (1979); *United States v. Mannino,* 551 F.Supp. 13 (S.D.N.Y.1982); *see also Commonwealth v. Calloway,* 313 Pa.Super. 173, 459 A.2d 795 (1983) (articulating a state rule that "statements made in connection with an offer to plead guilty are inadmissible" and noting that *Robertson* "provides a workable analytical framework" for identification of protected statements).

■ Applying the *Robertson* criteria, we find defendant's in-court "account of his prior [November 15, 1984] subjective mental impressions" (582 F.2d at 1366) credible. Defendant's refusal to speak to Agent Kundts at the Philadelphia National Bank without his attorney and his attending the November 15, 1984 meeting with his attorney evidence a belief that he would benefit from meeting with the AUSA and that his rights would be adequately protected.[6] Though defendant's remarks were admittedly voluntary, he did not simply walk into the AUSA's office and "spill the beans." Based on defendant's appearance and demeanor, the court credits his testimony that he intended to convince the Government not to prosecute him or to prosecute him for a lesser offense. Defendant's sub-

jective intent at the meeting, whether or not clearly manifested, was to negotiate with the Government in the hope of securing a concession.

Based on the totality of the circumstances, defendant's belief that he was engaged in plea discussions with a Government attorney was reasonable. There were outward manifestations that the November 15, 1984 conversation could be regarded as a plea discussion. Only the AUSA took notes at the meeting although the investigation was under the direction of the FBI; FBI Agent Kundts did not then file a Form 302 Report. This suggests that Agent Kundts and the AUSA thought this investigation would be concluded by defendant's agreement to plead guilty. Also, at the end of the meeting, the parties specifically agreed to discuss a possible "deal" or plea agreement several days later.[7] The Form 302 Report was not filed until five months after the meeting when it was clear a plea agreement had not been reached and an indictment would be sought. Based on these factors, we find it was objectively reasonable for defendant to have regarded the November 15, 1984 meeting as a plea discussion. Therefore, any statements made by defendant in the course of that plea discussion are inadmissible under Rule 11(e)(6).

■ The Court of Appeals for this Circuit has not yet considered amended Rule 11(e)(6) or the usefulness of the *Robertson* test. But a Government prosecutor would be well advised to state in writing at the outset of conversations that could arguably be categorized as plea discussions whether the Government was prepared to negotiate and, if not, that statements of a defendant

---

**6.** Certainly, defense counsel was partially to blame for the apparent absence of a "meeting of minds" between the prosecution and defense on November 15, 1984. Defense counsel could have clarified or asked the AUSA to clarify the purpose of the meeting and made this motion unnecessary.

**7.** This court rejects the distinction between a deal and plea negotiations articulated in *Com-*

*monwealth v. Calloway,* 313 Pa.Super. 173, 459 A.2d 795 (1983). The court there wrote, "[t]here are myriad possible explanations underlying his [the accused's] motivation to provide 'information' for a 'deal' [to a district attorney]." 459 A.2d at 801. In the absence of alternative proffered explanations, it is most likely that the defendant contemplated exchanging information for lenient treatment.

or target of investigation [8] could be used as evidence against him. Placing on the Government the burden of categorizing discussions with an actual or potential defendant results in a rational, workable standard under Rule 11(e)(6) that is not dependent on difficult post-incident determinations of fact and evaluations of intent gleaned from oral recollections or informal notes of off-the-record conferences.

The *Robertson* test was appropriate prior to the 1980 Amendments to Rule 11(e)(6). Rule 11(e)(6) formerly contemplated plea bargaining with anyone with real or apparent negotiating authority, including DEA, FBI, and Secret Service agents and police. *See, e.g., United States v. Pantohan*, 602 F.2d 855 (9th Cir.1979) (Bureau of Alcohol, Tobacco, and Firearms agents); *Robertson*, (DEA agents); *United States v. Herman*, 544 F.2d 791 (5th Cir. 1977) (postal inspectors). Examining the circumstances surrounding a defendant's admissions to determine whether they were reasonably intended to occur in a bargaining context was then necessary. But Rule 11(e)(6) has since been restricted to plea discussions with a Government attorney, so that it is proper to place the burden of communicating the nature of the meeting on the Government.[9] A Government prosecutor, generally presumed to have the authority to plea bargain,[10] should have the obligation of informing a defendant of the nature of a meeting; just as a Government attorney can make a proffer, he or she can make a "non-proffer." [11]

"Plea discussions" may be broadly defined, so it is appropriate for a Government attorney to communicate expressly to a defendant if a discussion that might arguably be a plea discussion is *not* in fact a protected plea discussion; otherwise, all statements at a meeting where the possibility of a plea is mentioned should be considered to have been made in the course of plea discussions.

The post-*Robertson* amendments to Rule 11(e)(6) broadened privileged communications to include "any statement made in the course of plea discussions" rather than only statements "made in connection with, and related to" an *offer* to plead guilty. The Advisory Committee Notes on the 1979 Amendments state, "by relating the statements to 'plea discussions' rather than 'an offer to plead,' the amendment ensures 'that even an attempt to open plea bargaining [is] covered under the same rule of inadmissibility.'" Advisory Committee Notes on 1979 Amendments (citing *United States v. Brooks*, 536 F.2d 1137 (6th Cir. 1976)).

In addition to the post-*Robertson* changes in the language of Rule 11(e)(6), other policies and principles favor placing the burden of communication on the Government. Plea bargaining would then occur only when both prosecutor and defendant are aware of the context of negoti-

---

**8.** Rule 11(e)(6) does not distinguish between pre-indictment and post-indictment plea discussions with a Government prosecutor.

**9.** The only federal case since the 1980 amendments to Rule 11(e)(6) concerning a defendant's statements to an AUSA found the statements inadmissible; the court's analysis relied on the *Robertson* factors. *See United States v. Mannino*, 551 F.Supp. 13 (S.D.N.Y.1982). *But see Commonwealth v. Calloway*, 313 Pa.Super. 173, 459 A.2d 795, 801 (1983) (finding suspect's remarks to district attorney were "unsolicited, unilateral statements").

**10.** The vast majority of all defendants in federal courts plead guilty. In fiscal year 1970, 24,111 of 28,178 convictions in United States District Courts were by pleas of guilty or nolo contendere, *see Santobello v. New York*, 404 U.S. 257,

264 n. 2, 92 S.Ct. 495, 499 n. 2, 30 L.Ed.2d 427 (1971) (Douglas, J. concurring) (citing Report of Director of the Administrative Office of the United States Courts for the period July 1 through December 31, 1970). *See also* J. Bond, *Plea Bargaining & Guilty Pleas* § 1.2 (2nd ed. 1982) (noting that approximately 85% of federal cases are disposed of by guilty plea).

**11.** "A disclaimer of bargaining authority, if sufficiently brought home to the defendant, will erode the reasonableness of any belief that genuine bargaining is to transpire. A confession given in the face of a sufficient disclaimer might be precatory rather than tendered in exchange for a particular concession." *Robertson*, 582 F.2d at 1373 n. 3 (Morgan, J., concurring).

ations. Plea bargaining is an integral part of our criminal justice system:

> Whatever might be the situation in an ideal world, the fact is that the guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned.

*Blackledge v. Allison*, 431 U.S. 63, 71, 97 S.Ct. 1621, 1627, 52 L.Ed.2d 136 (1977) (citations omitted). *See also Santobello v. New York*, 404 U.S. 257, 261, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971) ("Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons.").

Plea bargaining can only be beneficial if it fulfills the Congressional intent of not "discourag[ing] defendants from being completely candid and open during plea negotiations." Advisory Committee Notes on 1979 Amendments (citing H.R.Rep. No. 94–247, 94th Cong., 1st Sess. 7 (1975)). Candor is best achieved if defendants are free to participate in discussions with Government attorneys without fear that admissions can subsequently be used against them.

> The legal background has thus shifted from the propriety of plea bargaining to how best to implement and oversee the process. Plea bargaining is a tool of conciliation. It must not be a chisel of deceit or a hammered purchase and sale.... Accordingly, we must examine plea bargains under the doctrine of caveat prosecutor.

*United States v. Herman*, 544 F.2d 791, 796 (5th Cir.1977). We find that a rule of *caveat prosecutor*, properly applied, places the burden on a Government attorney to decide and state when it is engaged in a bargaining posture and when it is not so that prosecutors would neither intentionally nor unintentionally trap an unwary defendant who makes admissions in the vain hope of obtaining a bargain.

Placing this burden on the Government best assures the preservation of a defendant's constitutional rights. Plea bargaining sometimes involves suspects who have yet to be indicted or arraigned, so that no Sixth Amendment constitutional right to counsel will have attached and defendants might not have counsel when meeting with a Government attorney. A rule of presumed inadmissibility in the absence of an express Government disclaimer protects defendants whether with or without counsel from self-incriminating statements arguably "involuntary" because made in the misguided belief that they were given in exchange for possible Government concessions.

A clearly articulated, non-fact specific standard is also more easily administered that the *Robertson* test. If a Government attorney were to explain whether defendant's statements could subsequently be used against him at the beginning of any meeting where bargaining for concessions was a possibility, it would preclude the problem posed where defendant and prosecutor both act in good faith but fail to have a "meeting of the minds" concerning the content and context of a discussion. This standard would minimize the need for determining the veracity of expectations asserted after-the-fact and making fine line distinctions between inadmissible plea negotiations and admissible "confession bargains." *See Robertson*, 582 F.2d at 1371–72 (Morgan, J., concurring) (criticizing the majority for making an untenable distinction between plea and confession bargaining).

■ Communications from a defendant or target of investigation to a prosecutor that may arguably be considered plea discussions should, in the absence of a prosecutorial disclaimer, be presumed inadmissible under Rule 11(e)(6). Such a standard provides ready guidance to both prosecutors and defendants and fulfills the objectives of Fed.R.Crim.P. 11(e)(6) and our system of criminal justice.