459 A.2d 795

**COMMONWEALTH of Pennsylvania**

**v.**

**Keith CALLOWAY, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 14, 1982.

Filed April 15, 1983.

174

Francis M. Socha, Assistant Public Defender, Harrisburg, for appellant.

William A. Behe, Deputy District Attorney, Harrisburg, for Commonwealth, appellee.

Before CAVANAUGH, BECK and MONTEMURO, JJ.

MONTEMURO, Judge:

Appellant, Keith Calloway, was found guilty by a jury of criminal conspiracy.[1] Post-verdict motions were denied. Appellant was then sentenced to a term of five (5) to ten (10) years imprisonment. This appeal followed.

Appellant presents two questions on this appeal:

1. Did the lower court err in admitting into evidence statements made to the police and district attorney by the appellant?

2. Was the evidence insufficient as a matter of law to sustain the verdict? [2]

---

1. 18 Pa.C.S.A. § 903.

2. In appellant's brief these were the only contentions set forth in his "Statement of Questions." In his "Argument" portion of the brief, appellant subdivided the insufficiency contention in three parts:

   (a) The evidence presented by the Commonwealth at trial to establish the overt act committed in furtherance of a conspiracy varied crucially from the overt act alleged in the information.

   (b) The Commonwealth did not establish beyond a reasonable doubt the existence [sic] of a conspiratorial agreement between the appellant and the perpetrator of the robbery and homicide.

For ease of discussion we will address the latter contention first. We affirm.

To evaluate the sufficiency of the evidence, we must view the evidence in the light most favorable to the Commonwealth as verdict winner, accept as true all the evidence and all reasonable inferences upon which, if believed, the jury could properly have based its verdict, and determine whether such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt. Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and with weight to be accorded the evidence produced. The fact-finder is free to believe all, part or none of the evidence. *Commonwealth v. Yost*, 478 Pa. 327, 386 A.2d 956 (1978). *Commonwealth v. Tate*, 485 Pa. 180, 182, 401 A.2d 353, 354 (1979).

So viewed, the record shows that in November of 1979, the appellant was hired, as a dishwasher, by Elby's Big Boy Restaurant located in Lower Paxton Township, Dauphin County. As things turned out, when appellant worked the 4:00 p.m. to 11:00 p.m. shift, he usually received a ride home from the assistant manager, William White. Routinely, before dropping appellant off at his home, and the other employees who also received a ride, Mr. White would deposit the night's proceeds into a nearby bank. Contrary to company policy which required that the deposits be made with a police escort, Mr. White did not adopt this security measure. Mr. White believed that the police escort was unnecessary because he felt adequately protected when

(c) The Commonwealth did not establish beyond a reasonable doubt that the appellant did not abandon the conspiracy.

Parts (b) and (c) are decided within the context of the general insufficiency question. In any event, appellant's argument that he abandoned the conspiracy based on the facts presented here is meritless. 18 Pa.C.S.A. § 903(g)(3); See, *Commonwealth v. Roux*, 465 Pa. 482, 350 A.2d 867 (1976); *Commonwealth v. Laurin*, 269 Pa.Super. 368, 409 A.2d 1367 (1979).

Part (a) was not included in appellant's "Statement of Questions" and is, therefore, waived. See, *Commonwealth v. Unger*, 494 Pa. 592 n. 1, 432 A.2d 146 n. 1 (1980); Pa.R.A.P. 2116(a). However, this issue also lacks any merit whatsoever.

accompanied by the appellant and the other Elby employees. Unbeknownst to Mr. White, the appellant had something else on his mind.

In December of 1979, before Christmas, the appellant met with an associate of his, Kirk Bennett, at Otto's Atmosphere, a bar located in Harrisburg. The discussion at this meeting evolved into and focused on a plan, conceived by appellant, to rob Elby's of the night proceeds. Appellant informed Bennett that the assistant manager would leave the restaurant at 11:00 p.m. with the money. Appellant would accompany him. There would be no guards. They agreed that it would be best to have three participants handle the robbery. Appellant would keep the assistant manager calm while walking to the car, Bennett would perform the actual "stick up" and another Elby's employee, one Jeffrey Ross, would take the money. The discussion ended. Thereafter, Bennett discussed the plan with the other associate, Jeffrey Ross.

In early January of 1980, the appellant and Bennett met at Otto's a second time. They again went over the robbery and decided to split the money evenly. This time appellant included Ross' name in the distribution.

On January 11, 1980, Bennett and Ross met at George's Bar and decided to commit the robbery that night. They did not forewarn the appellant but drove straight to Elby's and waited. Mr. White, at approximately 11:00 p.m., exited the restaurant along with the appellant and another employee. By this time, both Bennett and Ross had gotten out of their car and were positioned behind a backyard fence. They watched, from a 20 to 30 yard distance, Mr. White walk around the truck to get to the driver's side. At this point, in a spineless and cold blooded act, Bennett aimed his .22 caliber rifle and fatally shot Mr. White in the back. The appellant, upon hearing the shot, scurried back into the restaurant, while Mr. White staggered to the front of the truck. Ross jumped the fence they were hiding behind, ran to the driver's side of Mr. White's truck, but did not find the money. Ross retreated and both he and Bennett took off in

their car.. The next morning the appellant expressed dissatisfaction to Bennett because of the shooting.

Appellant argues that because he was not *aware* of the fact that Bennett and Ross were going to execute the robbery on the night of January 11, 1980, he could not be found guilty beyond a reasonable doubt of criminal conspiracy.

Criminal conspiracy is defined as follows:

Definition of conspiracy—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime: or

agrees to aid such other person or persons in the planning or commission of such crime or an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a)(1) and (2).

A conspiracy is an agreement between two or more parties to do an unlawful act. *Commonwealth v. Kennedy,* 499 Pa. 389, 453 A.2d 927 (1982). It is well settled that a co-conspirator not present at the execution of the crime is not relieved of liability. *Commonwealth v. Eiland,* 450 Pa. 566, 301 A.2d 651 (1973); *Commonwealth v. Burdell,* 380 Pa. 43, 110 A.2d 193 (1955). It has been held, on facts very similar to the instant case, that:

Where the existence of a conspiracy is established, the law imposes upon a conspirator full responsibility for the natural and probable consequences of acts committed by his fellow conspirator or conspirators if such acts are done in pursuance of the common design or purpose of the conspiracy. Such responsibility attaches even though such conspirator was not physically present when the acts were committed by his fellow conspirator or conspirators and extends even to a homicide which is a contingency of

the natural and probable execution of the conspiracy, even though such homicide is not specifically contemplated by the parties. (*Commonwealth v. Spardute,* 278 Pa. 37, 122 A. 161)

*Commonwealth v. Thomas,* 410 Pa. 160, 165, 189 A.2d 255, 258 (1963).

In *Commonwealth v. Thomas, supra,* the appellant was convicted of conspiracy and second degree murder. The facts introduced by the Commonwealth in that case sought to substantiate the following scenario for the conspiracy:

The theory of the Commonwealth was that Thomas, a deputy sheriff of Dade County, Miami, Florida, became acquainted with Mrs. Lulubel Rossman [the deceased] when she enlisted the aid of Thomas' fellow deputy to check on the activities of a man with whom she thought herself to be amorously involved. Through such acquaintanceship, Thomas learned that deceased was in the habit of having large sums of money on her person and in her living quarters. The Commonwealth sought to prove that Thomas conceived the idea of robbing the deceased and to that end, through numerous telephone calls between Florida and Oklahoma and personal meetings in Florida and Oklahoma, formed a conspiracy with Gus DeMoss, Raymond Wilson and Frank Ellsworth; in furtherance of that conspiracy, Wilson and Ellsworth went to Philadelphia and, on July 3, 1955, entered the deceased's room in the Adelphia Hotel where they robbed her of a large sum of money; in the course of that robbery, the deceased met her death. (Footnotes omitted)

*Id.,* 410 Pa. at 162–163, 189 A.2d at 257.

■ In our present case, we have *direct* evidence of a conspiratorial agreement. Although the conspiracy was established through the testimony of a co-conspirator, such testimony is sufficient. *Commonwealth v. Tate,* 485 Pa. 180, 401 A.2d 353 (1979). The substance of that agreement—to rob an Elby's assistant manager of a night's proceeds before deposit—was carried out, except for the fact that appellant was unaware prior to the robbery and

murder that the crime was going to be committed that night. However, just as a co-conspirator is not relieved of criminal liability when not *physically* present at the scene of the crime, we believe that appellant's *unawareness,* while physically present, *a fortiori,* is no ground to challenge the sufficiency of the evidence. The illegal agreement is the substance of the crime of conspiracy, and in this case, that agreement was proven beyond a reasonable doubt. Appellant's co-conspirators, Bennett and Ross, subsequently executed that plan. We find the evidence sufficient to justify, beyond a reasonable doubt, the jury's verdict that appellant was guilty of criminal conspiracy.

Appellant also contends that the court below erred in admitting into evidence certain statements he made to law enforcement authorities. Appellant bases his claim on two grounds: 1) that the statements are hearsay and not subject to any exception, *i.e.,* they do not qualify as admissions (statements are not relevant evidence), and 2) if the statements are admissible, per an exception, that, in any event, his last two statements were not admissible because such communications were made in furtherance of plea negotiations.

These statements were made on January 12, 1980, January 15, January 25, February 7, March 10, and March 18, and were introduced through the testimony of Detective Womer. The substance of this testimony can be summarized as follows: In the early morning hours of January 12, 1980, immediately following the shooting of William White, appellant, as a witness to the crime, gave a statement to the police. Appellant admitted at that time that he knew the procedures followed with regard to Elby's night receipts and that he always received a ride home with Mr. White. The appellant was subsequently interviewed on January 15, January 25, and February 7, at which times he denied any further knowledge of the matter. However, on March 10, 1980, he requested a meeting with the district attorney and the meeting was held on March 18, 1980. At this time appellant changed his position and indicated that he did

have information which would only be divulged if the district attorney made "a deal" with him.  The district attorney refused the appellant's offer and the meeting was concluded.

In addition, on January 15, 1980, appellant also met with Detective Weidensaul.  At this meeting, appellant gave a description of a person he claimed he saw the night of the shooting.  From this description and with the use of an identikit, Detective Weidensaul made up a composite sketch of the person described by appellant.

It is settled law in this Commonwealth that a false denial of guilt by an accused is admissible as substantive evidence of his consciousness of guilt.  *Commonwealth v. Cristina*, 481 Pa. 44, 54, 391 A.2d 1307, 1311–12 (1978); *Commonwealth v. Bolish*, 381 Pa. 500, 524, 113 A.2d 464, 476 (1955); *Commonwealth v. Lowry*, 374 Pa. 594, 601, 98 A.2d 733, 736 (1953); *Commonwealth v. Homeyer*, 373 Pa. 150, 158–59, 94 A.2d 743, 746 (1953); *Commonwealth v. Spardute*, 278 Pa. 37, 43, 122 A. 161 (1923).  We have held:

> ... false or contradictory statements by the accused are admissible since the jury may infer therefrom that they were made with an intent to divert suspicion or to mislead the police or other authorities, or to establish an alibi or innocence, and hence are indicatory of guilt.

*Commonwealth v. Bolish*, supra [381 Pa.] at 524, 113 A.2d at 476.  Professor Wigmore has written: *"False exculpatory statements made to law enforcement officers constitute circumstantial evidence of guilty consciousness."*  II Wigmore, Evidence § 278 (3d ed. Supp. 1979) (emphasis in original).

*Commonwealth v. Glass*, 486 Pa. 334, 346–347, 405 A.2d 1236, 1242 (1979).

■ Appellant's statements, taken as a whole, provided information which we believe was intended to mislead the police investigation and to obfuscate his participation in the crime.  First, appellant stated on three occasions that he did not see anyone the night of the shooting, along with his

account of January 12, 1980, concerning the events before and after the shooting. Included in this statement was appellant's knowledge of the night proceeds deposit procedure as well as the fact that he usually received a ride home from Mr. White. On January 15, 1980, appellant also described for another detective a person he believed he saw the night of the shooting. This description was given after he had met with Detective Womer. Finally, appellant stated that he had information which, in exchange for a "deal", he was willing to provide to the district attorney. As such, these statements were voluntary extra-judicial admissions which in conjunction with the other evidence produced by the Commonwealth, served as relevant indications of appellant's guilt.

Appellant further offers as a ground in support of his contention that the last two statements he made to the authorities, even if they are found to be admissions, were not admissible because these statements were made to initiate plea negotiations. Appellant cites various federal case decisions for that proposition. *U.S. v. Herman,* 544 F.2d 791 (5th Cir., 1977); *U.S. v. Brooks,* 536 F.2d 1137 (6th Cir.1976); *U.S. v. Smith,* 525 F.2d 1017 (10th Cir., 1975); *U.S. v. Ross,* 493 F.2d 771 (5th Cir., 1974).

The only case in Pennsylvania which, *in dictum,* has discussed this particular issue within the criminal context is *Commonwealth v. Cohen,* 133 Pa.Super. 437, 2 A.2d 560 (1938). In *Cohen,* supra, the Commonwealth introduced a statement made by the appellant to the prosecuting police officers at his preliminary hearing wherein the appellant offered to change his plea to guilty, if the officer would arrange a shorter sentence with the district attorney. The judgment of sentence was reversed for other reasons but this court, in *Cohen,* went on to say that other jurisdictions were divided on the question of the admissibility of offers to plead guilty. Without analysis, the court was swayed by "the apparent weight of authority against the admissibility of such evidence," *Id.,* 133 Pa.Superior at 448, 2 A.2d at 565, and believed that the question at trial should not have been

introduced.  Although this has been the last word in Pennsylvania jurisprudence, the federal courts and other state jurisdictions have wrestled with the problem.

■  Our review of those federal cases and federal rules [3] on this point, as well as general policy considerations in this particular area, leads us to the conclusion that any statements made in connection with an offer to plead guilty are inadmissible.  The logic behind a Criminal Justice system that encourages plea bargaining requires that result: [4]

**3.**  Fed.R.Crim.P. 11(e)(6) provides:

Inadmissibility of Pleas, Offers of Pleas, and Related Statements.  Except as otherwise provided in this paragraph, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with, and related to, any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer.  However, evidence of a statement made in connection with, and relevant to, a plea of guilty, later withdrawn, a plea of nolo contendere, or an offer to plead guilty or nolo contendere to the crime charged or any other crime, is admissible in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record, and in the presence of counsel.

Fed.R.Evid. 410 provides:

Inadmissibility of Pleas, Offers of Pleas, and Related Statements

Except as otherwise provided in this rule, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with, and relevant to, any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer.  However, evidence of a statement made in connection with, and relevant to, a plea of guilty, later withdrawn, a plea of nolo contendere, or an offer to plead guilty or nolo contendere to the crime charged or any other crime, is admissible in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record, and in the presence of counsel.

**4.**  The A.B.A. Standards Relating to Pleas of Guilty contain the following standard relating to plea bargaining:

Discussion and agreement not admissible.

Unless the defendant subsequently enters a plea of guilty or nolo contendere which is not withdrawn, the fact that the defendant or his counsel and the prosecuting attorney engaged in plea discussions or made a plea agreement should not be received in evidence against or in favor of the defendant in any criminal or civil action or administrative proceedings.

A.B.A. *Standards Relating to Pleas of Guilty* § 3.4 (1968)

The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called "plea bargaining," is an essential component of the administration of justice. Properly administered, it is to be encouraged. If every criminal charge were subjected to a full-scale trial, the States and the Federal Government would need to multiply by many times the number of judges and court facilities.

Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons. It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pretrial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned. See *Brady v. United States*, 397 U.S. 742, 751–752, 90 S.Ct. 1463 [1470–1471], 25 L.Ed.2d 747 (1970).

*Santobello v. New York*, 404 U.S. 257, 260–61, 92 St.Ct. 495, 498, 30 L.Ed.2d 427, (1971); see also, *Blackledge v. Allison*, 431 U.S. 63, 71, 97 St.Ct. 1621, 1627, 52 L.Ed.2d 136 (1977).

Initially, however, it must be determined in such cases whether or not the statement or statements made by an accused are in connection with plea negotiations. *U.S. v. Robertson*, 582 F.2d 1356 (5th Cir.1978) provides a workable analytical framework to determine the appropriate characterization:

... first, whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion, and second, whether the accused's expectation

was reasonable given the totality of the objective circumstances. *Id.* at 1366.

Of primary importance in assessing an accused's subjective expectation of negotiating a plea is whether the Commonwealth showed an interest in participating in such discussions. In line with this reasoning, voluntary, unsolicited statements uttered by an accused to authorities cannot be said to be made in furtherance of striking a plea bargain.

■ In the instant case, we conclude that appellant's statements were not made attendant to plea negotiations. Appellant, at the time he uttered the statements, was not under arrest, and would not be placed under arrest for the crime until some three months after his personal communication with the district attorney. Not being a defendant, there is then no reason for us to assume that he was offering to plead guilty to a crime for which he had not been charged. There are myriad possible explanations underlying his motivation to provide "information" for a "deal". We do not know what the "information" was or what type of "deal" he wanted to arrange. Neither did the district attorney. We know what appellant claims now, *i.e.,* he was attempting to open a plea bargaining discussion, but our focus seeks an explanation at the time the statements were made. The Commonwealth neither compelled the appellant to come forward nor exhibited a willingness to enter into plea negotiations with him. While it is true the district attorney agreed to meet with the appellant, per his request, we believe the facts indicate that the Commonwealth was interested in acquiring the "information" appellant said he had, whatever it was, but not to plea bargain. Appellant's remarks were simply unsolicited, unilateral statements which supports our conclusion that appellant could not have had a reasonable subjective expectancy that his statements were made in regard to a plea negotiation. We hold that the statements were properly admitted by the trial court.

Judgment of sentence is affirmed.