544 A.2d 54

COMMONWEALTH of Pennsylvania

v.

James JONES, Appellant.

Superior Court of Pennsylvania.

Submitted May 3, 1988.

Filed June 8, 1988.

---

David S. Shrager, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Com., appellee.

Before CIRILLO, President Judge, and BECK and POPOVICH, JJ.

CIRILLO, President Judge:

This is an appeal from the judgment of sentence entered by the Court of Common Pleas of Allegheny County on May 29, 1987.

We note initially that the appellant, James Jones, has challenged the excessiveness of his sentence. He has failed, however, to include in his brief a statement of reasons relied on for appeal as required by Pennsylvania Rule of Appellate Procedure 2119(f) and *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987). Because an appellant who challenges the discretionary aspects of sentence is not entitled to an appeal of right, but is only entitled to a review of his sentence if he has presented a substantial question to this court that his sentence compromises the Sentencing Code as a whole, *Tuladziecki*, 513 Pa. at 515, 522 A.2d at 20, we are precluded from considering Jones' appeal. We therefore quash the portion of this appeal dealing with sentencing.

We have disposed of the sentencing question first because we believe *Tuladziecki* prevents us from examining the merits of the case in attempting to determine whether a substantial question exists. *Id.*, 513 Pa. at 513, 522 A.2d at 19. Having quashed that part of the appeal, we will now examine the merits of this case. James Jones, was married to Carol Yobst for a period of eight years. The couple had problems with their relationship, and Jones moved out of their home and into the home of Linda Beatty. On June 18, 1985, Yobst was in the area of the Beatty house with a friend. Jones, who was driving his truck at the time, saw Ms. Yobst, and stopped to speak with her. They began to argue. Yobst testified that she refused to go with Jones, and that he, at that point, jumped back in the truck and bumped her with it. He then "gunned" the truck, according to Yobst, ran her over with it, and backed up, running her over again. She suffered severe injuries which paralyzed her from the waist down, and confined her to a wheelchair for life.

Jones argues that the trial court improperly allowed the prosecution to examine him on what it claimed was a prior inconsistent statement made during his plea colloquy.

At the time of the plea colloquy, Jones had told the court that he had moved the truck down the alley toward Yobst

and bumped her twice before running her down and then backing over her. At trial, Jones testified that his truck had been stopped when Yobst climbed up onto it with a full beer can, and that she then fell and injured herself when he put it in reverse attempting to escape her attack. He testified at trial that he never ran her over.

Jones was charged with criminal attempt to commit homicide, aggravated assault, recklessly endangering another person, and leaving the scene of an accident involving death or personal injury. He was convicted on three of those counts, and acquitted on the count of criminal attempt to commit homicide. His post-trial motions were denied, and he was sentenced to a period of not less than five nor more than ten years incarceration on the aggravated assault count. The court merged the count of recklessly endangering another person into the count of aggravated assault for purposes of sentencing, and did not sentence Jones on the count of leaving the scene of an accident. Jones moved that the court reconsider his sentence. That motion was denied, and Jones then appealed to this court.

Jones argues on appeal that the trial court erred in allowing the assistant district attorney to cross-examine him using his prior plea of nolo contendere, a plea which Jones had been permitted to withdraw. Jones also argues that the trial court erred in not granting a mistrial, or in the alternative, in failing to issue cautionary instructions to the jury after the assistant district attorney questioned a witness on cross-examination about Jones' silence. Because we agree that the trial court abused its discretion in allowing the prosecution to cross-examine the appellant on the basis of a withdrawn plea of nolo contendere, we reverse the order of the trial court.

It is well-settled in this Commonwealth that rulings on the scope and manner of cross-examination are within the discretion of the trial court whose decisions will be reversed only upon a showing of abuse of discretion. *Commonwealth v. Stinnett*, 356 Pa.Super. 83, 98, 514 A.2d 154, 162 (1986). Jones argues that using a statement from a plea

colloquy where the plea was granted and then later withdrawn is a violation of his fifth amendment right against self-incrimination, made applicable to the states by the fourteenth amendment. He claims that he was compelled to answer the questions put to him by the colloquy judge, who elicited the information concerning the accident from him, in order for his plea to be entered. For this reason, the trial court's permission to cross-examine him on the prior inconsistent statement made during the colloquy was an abuse of discretion.

After reviewing the case law as it exists in this state, as well as examining applicable federal rules and case law, we are convinced that using statements elicited during a guilty plea colloquy or plea of nolo contendere flies in the face of the fifth amendment. Courts in this Commonwealth have long adhered to the rule that evidence of a guilty plea or a plea of nolo contendere after it has been withdrawn is inadmissible for impeachment purposes or as substantive evidence.[1] In *Commonwealth v. Henderson*, 217 Pa.Super. 329, 272 A.2d 267 (1970), this court cited with approval the district court case of *United States ex rel. Spears v. Rundle*, 268 F.Supp. 691 (E.D.Pa.1967). In that case, a clerk of the court had testified that the defendant had previously pled guilty to the charges for which he now stood trial. The trial court had permitted the guilty pleas to be withdrawn. The district court stated, "When the court later permitted the withdrawal of the pleas, it recognized some inadequacies [in the pleas]. To later use this plea against him after a recognition of the inherent weaknesses it contained negates the permission to withdraw which was given in an exercise of the court's discretion. This lays a

---

1. In this Commonwealth, a plea of nolo contendere may be utilized to impeach a defendant's credibility to the same extent as a plea of guilty. *See Commonwealth v. Snyder*, 408 Pa. 253, 255, 182 A.2d 495, 496 (1962). Further, when a plea of nolo contendere is accepted by the court, it is equivalent in its effect on the case to a plea of guilty. *See Eisenberg v. Commonwealth, Department of Public Welfare*, 512 Pa. 181, 185, 516 A.2d 333, 335 (1986) (quoting *Commonwealth v. Ferguson*, 44 Pa.Super. 626, 628 (1910)); (*Commonwealth ex rel. Warner v. Warner*, 156 Pa.Super. 465, 466–467, 40 A.2d 886, 887 (1945)).

trap for the defendant." *Spears,* 268 F.Supp. at 698. The court went on to reason that the withdrawal of the plea vitiated the defendant's waiver of the privilege against self-incrimination. *Id.* at 699. "The privilege could not be voluntarily or ignorantly waived, and in view of the permission given to withdraw the plea, we find that the plea of guilty did not operate as a waiver. Therefore, it could not be offered into evidence against the [defendant] without infringing his privilege not to incriminate himself ... The use in evidence, therefore, of a prior withdrawn guilty plea violated [defendant's] constitutional rights guaranteed by the Fifth and Fourteenth Amendments...." *Id.* at 699.

In *Henderson,* this court applied the *Spears* reasoning in an attempt to use a prior guilty plea as impeachment material, rather than as part of the prosecution's case in chief. We found this to be forbidden by the reasoning in *Spears,* as well as by the Supreme Court of the United States in *Kercheval v. United States,* 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927). We quoted extensively from the Supreme Court's explanation of what a guilty plea is:

> A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is in itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences. When one so pleads, he may be held bound. But, on timely application, the court will vacate a plea of guilty shown to have been unfairly obtained or given through ignorance, fear, or inadvertence. Such an application does not involve any question of guilt or innocence. The court, in exercise of its discretion will permit one accused to substitute a plea of not guilty and have a trial if for any reason the granting of the priviledge seems fair and just.

*Henderson,* 217 Pa.Super. at 331–2, 272 A.2d at 268–269 (quoting *Kercheval,* 274 U.S. at 223–224, 47 S.Ct. at 583).

From that definition, we reasoned that a withdrawn guilty plea was inadmissible in this Commonwealth for impeachment purposes as well as for substantive evidence. *Id.* 217 Pa.Super. at 332, 272 A.2d at 269.

■ In this case, we are not faced with the admission of the existence of the plea itself into evidence after it had been withdrawn. We must instead determine whether statements made by defendant during a plea colloquy are admissible against the defendant as impeachment evidence after the plea has been withdrawn. We have been presented with no case directly on point by Jones. We agree, however, with his argument that where a defendant is compelled by a court to answer factual questions in relation to his plea in order for that plea to be accepted by the court, and those statements are later entered into evidence against him once the plea is withdrawn, he has been compelled to incriminate himself. That was the case here.

There is a line of cases closely analogous to this situation. We have held that statements made in connection with offers to plead guilty or nolo contendere are not admissible into evidence if certain criteria are met. In *Commonwealth v. Calloway*, 313 Pa.Super. 173, 459 A.2d 795 (1983), this court discussed the admissibility of statements made to initiate plea negotiations. After examining Federal Rule of Evidence 410, and Federal Rule of Criminal Procedure 11(e), as well as several federal cases dealing with these issues, we held that statements made in the context of plea negotiations were inadmissible in certain circumstances.[2] *Id.*, 313 Pa.Superior Ct. at 183–5, 459 A.2d at 800–801. According to that court, the logic behind encouraging plea bargaining required that result:

> The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called "plea bargaining," is an essential component of the administration of justice. Properly administered, it is to be encouraged. If every criminal charge were subjected to a full scale trial, the States and the Federal Govern-

2. The court set out guidelines to determine whether the statements made by an accused were within the context of plea negotiations.

ment would need to multiply by many times the number of judges and court facilities.

Disposition of charges after plea discussion is not only an essential part of the process but a highly desirable part for many reasons. It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pretrial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned.

*Id.,* 313 Pa.Superior Ct. at 184, 459 A.2d at 800. (quoting *Santobello v. New York,* 404 U.S. 257, 260–61, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971)) (citations omitted).

This Commonwealth has paid deference to any attempt on the part of the accused to truly initiate plea bargaining. If this is so with regard to statements made in an attempt to begin bargaining, the same holds true for those statements made in the course of the plea. In fact, the federal rules which deal with these issues are written in that manner. Federal Rule of Evidence 410 states that:

**Rule 410. Inadmissibility of Pleas, Plea Discussions, and Related Statements**

Except as otherwise provided in this rule evidence of the following is not, in any civil or criminal proceeding,

Relying on a Fifth Circuit Court of Appeals decision, *U.S. v. Robertson,* 582 F.2d 1356 (5th Cir.1978), the court held that a statement would only be held to fall within the contours of plea bargaining: (1) if the accused exhibited an actual subjective expectation to negotiate a plea at the time of discussion, and (2) if the accused's expectation was reasonable given the totality of the circumstances. The court further stated that the Commonwealth's show of interest in participating in such discussions was of primary importance in assessing the defendant's expectations. *Calloway,* 313 Pa.Super. at 184–185, 459 A.2d at 800–801. *See also Commonwealth v. Wolf,* 353 Pa.Super. 483, 510 A.2d 764 (1986) (appellant's statements properly admissible because Commonwealth had not shown any interest in settling case short of trial).

admissible against the defendant who made the plea or was a participant in the plea discussions:

(1) a plea of guilty which was later withdrawn;

(2) a plea of nolo contendere;

(3) any statement made in the course of any proceedings under Rule 11 of the Federal Rules of Criminal Procedure or comparable state procedure regarding either of the foregoing pleas;

(4) any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

However, such a statement is admissible (i) in any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it, or (ii) in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record and in the presence of counsel.

Fed.R.Evid. 410.[3]  We see no reason not to adopt a similar rule here.

We are persuaded by the reasoning of the United States District Court for the Eastern District of New York in *United States v. Udeagu,* 110 F.R.D. 172 (E.D.N.Y.1986) As that court pointed out, "Evidence of incriminating statements made in connection with a plea of guilty which is later withdrawn may not be used against the defendant as part of the government's case-in-chief as evidence of his guilt.  The reason is clear:  the incriminatory admissions make the plea nugatory since conviction would almost surely result from a trial." *Id.* at 174.  Further, the statements made are not properly used for impeachment purposes either:  Rules 410 and 11 introduce another factor into the equation.  These rules are designed to encourage unrestrained candor necessary to produce effective plea discussions and pleas.  See H.Conf.R.Rep. No. 94–414, 94th Cong.,

**3.** The wording of Fed.R.Crim.P. 11(e) is the same.

1st Sess. 10 (1975), U.S.Code Cong. & Admin.News 1975, pp. 674, 714. *Id.* at 174. The legislative history of Rule 410 indicates that Congress explicitly intended to preclude use of statements made in connection with pleas for impeachment purposes. Here, the plea in our system of jurisprudence, carries over to our state courts as well. We, too, in this Commonwealth seek to encourage plea bargaining for all the benefits outlined by the Supreme Court above. We, too, should be concerned with the effect upon the "unrestrained candor" in the context of pleas which Congress declined to abrogate, and which would be vitiated by our decision that statements, even though they are factual only, and not obviously taken from a plea colloquy, are admissible to impeach the defendant in this Commonwealth. We decline to take such a step.

Because we find that the trial court erred by allowing cross-examination of Jones with factual statements taken from his withdrawn plea colloquy, we will not consider his final contention that either a mistrial should have been granted because the prosecutor questioned a witness about his silence before arrest, or a cautionary instruction should have been immediately given. For these reasons, we reverse the decision of the trial court.

The judgment of sentence is vacated, and a new trial is granted. Jurisdiction is relinquished.