**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**John Arthur STUTLER, Appellant.**

Superior Court of Pennsylvania.

Submitted July 7, 2008.

Filed Feb. 11, 2009.

Jeremy J. Davis, Uniontown, for appellant.

Nancy Vernon, Asst. Dist. Atty., for Com., appellee.

BEFORE: MUSMANNO, ORIE MELVIN and KLEIN, JJ.

OPINION BY MUSMANNO, J.

¶ 1 John A. Stutler ("Stutler") appeals from the judgment of sentence imposed after he was found guilty of burglary, criminal conspiracy, criminal attempt to commit theft by unlawful taking, and crim-

---

inal mischief.[1] We vacate the judgment of sentence and remand for a new trial.

¶ 2 The trial court set forth the pertinent facts of this case as follows:

On the evening of November 22, 2005, and into the early morning hours of November 23, 2005, [Stutler,] together with his cousin, George Lilley[, Jr.] ["Lilley"], and other individuals were partying at the Johnson residence ... in Fayette County. Lilley arrived at that location at or about 5:00 P.M.[,] November 22, 2005[,] in his father's Chevrolet S–10 pickup truck. Later that night, [Stutler] requested that [Lilley] lend [him] [Lilley's] father's truck[,] ostensibly to visit a girl. At some time during the night[, Lilley] agreed to [Stutler's] request and provided him with the keys to the truck. In the early morning hours of November 23, 2005, [Stutler] called [Lilley] and subsequently reappeared at the Johnson residence before daylight [on] November 23, 2005. [Stutler] told [Lilley] that his father's S–10 pickup truck had been stolen.... [Lilley] called his father and learned that the police had already made [an] inquiry about the truck and that the truck had been used in the commission of a burglary.

...

On November 23, 2005, Ronald Craig ["Craig"] was residing ... [in] a residence [ ] situate[d] on the opposite side of the road and approximately 1[,]200 feet from See Mor's Grill, a restaurant owned by Roxanne Kern. The restaurant had closed for business on November 22, 2005, [at] about 10:00 P.M. At or around 3:00 A.M. [on] November 23, 2005, Craig was on the porch of his home drinking a cup of coffee when he

---

1. *See* 18 Pa.C.S.A. §§ 3502, 903, 901, 3921, 3304.

observed an S–10 pickup truck stop in front of See Mor's Grill. He observed an individual exit the passenger side of the vehicle and approach the restaurant. He observed the individual strike at the building and could hear glass being broken. Craig immediately telephoned the Kern residence and alerted Roxanne and her husband to the break-in. Craig then observed the pickup truck back up to the front of the restaurant and observed the passenger retrieve a chain from the vehicle to hook to [an] ATM machine[, which was located inside the restaurant.]

John Bevans ["Bevans"], Roxanne Kern's husband, responded to the scene in his truck approximately five minutes after receiving [Craig's] call. Upon his arrival at the restaurant, Bevans observed the pickup truck pulled up to the front door. Two men were standing in front of the pickup truck attempting to wrap a chain around the ATM machine[,] which was leaning out through the broken front door. The men were dressed in dark clothes with ski masks covering their faces. Bevans pulled his vehicle directly behind the S–10 pickup truck[,] blocking the vehicle's exit. Unable to flee in the truck, the two men fled on foot down the road in the opposite direction from the Craig residence[,] leaving behind the S–10 pickup truck and the chain. Bevans came into close enough proximity to the driver to observe through the ski mask that he was Caucasian.

. . .

On November 23, 2005, Shannon Parkinson, a friend of [Stutler], was . . . . contacted [by Stutler, who] told her that if the police came to her house[, she was to] tell them that [Lilley] had been sleeping on her couch and that his truck was stolen from her driveway. At ap-proximately daybreak when the police arrived at her residence, she complied with [Stutler's] request and lied to the police.

On September 19, 2006, [Stutler,] while in the custody of the Pennsylvania State Police [regarding an unrelated charge of receiving stolen property,] in an interview room at the Uniontown State Police Station[,] provided the police with a statement indicating his involvement in the burglary of See Mor's Grill. [Stutler] indicated that he rented a truck from his cousin[, Lilley,] to take garbage from the Johnson residence. [Stutler] stated that he and [his accomplice] drove to See Mor's Grill, entered the building, knocked the ATM machine over and attempted to remove it from the restaurant. [Stutler] indicated that their vehicle was pinned in by another truck. They ran to [the] Johnson's house and call[ed] [Lilley] to report his truck stolen.

Trial Court Opinion, 3/19/08, at 2–5 (citations omitted).

¶ 3 As indicated by the trial court, on September 19, 2006, Stutler gave an inculpatory statement to Pennsylvania State Troopers James L. Garlick ["Trooper Garlick"] and Scott Krofcheck ["Trooper Krofcheck"] at the Uniontown barracks. *See* N.T., 7/9–10/07, at 85–86. Trooper Garlick testified that previously, on August 30, 2006, he and Trooper Krofcheck, while transporting Stutler regarding his arraignment on the receiving stolen property charge, "had a conversation with [Stutler] about cooperation with the Commonwealth." *Id.* at 23. Trooper Garlick testified that Stutler declined to cooperate at that time. *Id.* Of particular significance to this appeal, however, Trooper Garlick, in a Pennsylvania State Police Report dated October 21, 2006 ["PSP Report"], wrote that "Stutler[, on August 30, 2006,] advised

that he would be willing to cooperate with the Commonwealth if he would receive judicial consideration for his cooperation." Docket No. 5, PSP Report at 10 (capitalization omitted).

¶ 4 At some point between August 30, 2006, and September 19, 2006, Trooper Krofcheck met with Fayette County District Attorney Nancy Vernon ["DA Vernon"] and spoke with her regarding Stutler. *Id.; see also* N.T., 7/9–10/07, at 31–32. DA Vernon told Trooper Krofcheck that if Stutler decided to cooperate with the Commonwealth, Troopers Krofcheck and Garlick were authorized to communicate to Stutler DA Vernon's plea bargain offer of county sentences for the receiving stolen property charge and the charges in the instant appeal as well as immunity for information regarding any other crimes in which Stutler had been involved. Docket No. 5, PSP Report at 10.[2] Trooper Garlick stated that on September 19, 2006, after he informed Stutler of DA Vernon's offer,[3] Stutler decided to cooperate with the Commonwealth. *Id.; see also* N.T., 7/9–10/07, at 26, 28.

¶ 5 Prior to Stutler's giving his statement, Trooper Garlick read Stutler his *Miranda*[4] rights and Stutler signed a *Miranda* waiver form. N.T., 7/9–10/07, at 86–89. Stutler then gave the statement detailing his involvement in the burglary. At the time Stutler gave his statement, he did not have counsel present. *Id.* at 98. However, after giving his statement, Stutler refused to cooperate with the Commonwealth, and the Commonwealth's offer for county time was withdrawn. *Id.* at 24, 27.

¶ 6 At trial, Stutler sought to suppress his September 19, 2006 statement; the Commonwealth argued that it was admissible. After conducting a lengthy *in camera* discussion regarding the admissibility of Stutler's statement, the trial judge decided to admit the evidence over Stutler's objections. *Id.* at 18–34. At trial, Trooper Garlick read to the jury portions of the transcribed statement, in which Stutler fully admitted his complicity in the crime. *Id.* at 90–92.

¶ 7 On July 10, 2007, the jury found Stutler guilty of all of the above-mentioned charges. On August 3, 2007, the trial court sentenced Stutler to an aggregate prison term of two to seven years on the burglary conviction and a concurrent term of one to three years on the criminal attempt conviction. Regarding the criminal conspiracy and criminal mischief convictions, the trial court accepted the guilty verdicts without imposing further penalty. Stutler then filed the instant timely appeal.

¶ 8 On appeal, Stutler raises the following questions for our review:

1. Whether the [trial] court erred in admitting [Stutler's] statements made in the course of plea discussions with the arresting officer in violation of Pennsylvania Rule[ ] of Evidence Rule 410[ (a) ](4)[?]

2. Whether the evidence was legally and factually insufficient to show that [Stutler] committed the acts of burglary, criminal conspiracy to commit burglary, criminal attempt-theft by unlawful taking, and criminal mischief[?]

---

**2.** Trooper Krofcheck, after meeting with DA Vernon, communicated to Trooper Garlick DA Vernon's authorizing the troopers to convey to Stutler her plea bargain offer. *See* Docket No. 5, PSP Report at 10; *see also* N.T., 7/9–10/07, at 31.

**3.** Trooper Garlick specifically testified that he had informed Stutler that DA Vernon had made the plea bargain offer. *See* N.T., 7/9–10/07, at 28.

**4.** *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Brief for Appellant at 3 (issues re-numbered),(capitalization omitted).

■ ¶ 9 Stutler argues that pursuant to Pennsylvania Rule of Evidence 410(a)(4), the lower court erred in failing to suppress Stutler's September 19, 2006 statement because it was made in the course of plea negotiations. Brief for Appellant at 9. Rule 410, governing the inadmissibility of pleas, plea discussions, and related statements, provides, *inter alia,* as follows:

> (a) **General Rule.** Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:
>
> · · ·
>
> (4) any statement ***made in the course of plea discussions with an attorney for the prosecuting authority*** which does not result in a plea of guilty or which results in a plea of guilty later withdrawn.

Pa.R.E. 410(a)(4) (emphasis added).

¶ 10 Stutler points out that DA Vernon authorized Trooper Krofcheck to communicate to Stutler the offer of a county incarceration sentence in exchange for Stutler's cooperation with the Commonwealth. Brief for Appellant at 9. Stutler further points out that Trooper Garlick

testified at trial that he informed Stutler that the offer for county time was made by DA Vernon. *See id; see also* N.T., 7/9–10/07, at 28. Stutler maintains that his decision to make his statement and cooperate with the Commonwealth was directly responsive to DA Vernon's plea bargain offer, and that absent DA Vernon's offer, Stutler would not have admitted to his involvement in the incident at See Mor's Grill. Brief for Appellant at 9–10. Stutler therefore argues that although no attorney for the prosecuting authority was physically present at the time he made his statement, it is nonetheless inadmissible under Rule 410(a)(4) "because it was with [DA Vernon's] authority that ... Troopers [Garlick and Krofcheck] made the plea offer to [Stutler]." *Id.* at 9

¶ 11 The trial court found Rule 410(a)(4) to be inapplicable since "at no time did the District Attorney personally engage in any plea negotiations with [Stutler] or [his] counsel relative to this case." Trial Court Opinion, 3/19/08, at 14.[5] At Stutler's trial, the court similarly rejected Stutler's Motion to suppress his statement, reasoning that, *inter alia,* "[t]his wasn't a plea negotiation. The District Attorney wasn't there." N.T., 7/9–10/07, at 32.

¶ 12 Although there is precedent in Pennsylvania closely analogous to this situation, this precise issue appears to be a question of first impression.[6]

---

**5.** We note that that we do not have the benefit of a position in opposition to Stutler's argument on appeal from the Commonwealth as the Fayette County District Attorney's Office ["Fayette County DA"] declined to file a brief in this case. This Court directed our Prothonotary to contact the lower court concerning the lack of a brief for the Commonwealth. The Fayette County DA informed this Court that the Commonwealth elected not to provide the Court with the benefit of its analysis and views of the legal issues presented by Stutler, and is relying on the Opinion of the lower court. The Fayette County DA has

shown a pattern of declining to file a brief on behalf of the Commonwealth. The choice to not file a brief on behalf of the Commonwealth significantly increases the difficulty of our role on appeal.

**6.** Indeed, this Court in *Commonwealth v. Mascitti,* 368 Pa.Super. 454, 534 A.2d 524, 531 n. 2 (1987), *rev'd,* 519 Pa. 235, 546 A.2d 619 (1988) acknowledged the controversy surrounding Rule 410(a)(4), stating that "[t]he rule and its application continues to engender active debate."

¶ 13 Our standard of review, however, is well settled: the admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. *Commonwealth v. Treiber,* 582 Pa. 646, 874 A.2d 26, 31 (2005).

¶ 14 In *Commonwealth v. Calloway,* 313 Pa.Super. 173, 459 A.2d 795, 800 (1983), this Court held that, generally, any statements made during plea negotiations are inadmissible in light of several important policy considerations, including the essential role that plea bargaining plays in the administration of justice. The *Calloway* Court observed that the critical threshold inquiry is whether or not the accused's statement or statements were, in fact, made in connection with plea negotiations. *Id.* In *Commonwealth v. Miller,* 390 Pa.Super. 129, 568 A.2d 228, 230–31 (1990), this Court further elaborated that

> [i]t is only those admissions arising out of and inherent in the plea discussion which are protected by the theory that to permit their admission in evidence at trial, if negotiations fail or the plea is withdrawn, would be to place a chilling effect on such discussions.

The *Calloway* Court, relying upon a United States Court of Appeals for the Fifth Circuit decision,[7] set forth the following analytical framework to determine the appropriate characterization:

> [F]irst, whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion, and second, whether the accused's expectation was reasonable given the totality of the objective circumstances. *Of primary importance in assessing an accused's subjective expectation of negotiating a plea is whether the Commonwealth showed an interest in participating in such discussions.* In line with this reasoning, voluntary, unsolicited statements uttered by an accused to authorities cannot be said to be made in furtherance of striking a plea bargain.

*Calloway,* 459 A.2d at 800–01 (emphasis added),(internal citation omitted).

¶ 15 In *Calloway,* the appellant met with a District Attorney regarding a crime that was under investigation and stated that he would be willing to provide inculpatory information to the Commonwealth, but only if the District Attorney "made a deal with him"; the District Attorney refused the appellant's offer. *Id.* at 798. The *Calloway* Court, in response to the appellant's argument that the lower court erred by admitting into evidence his statement to the District Attorney since it was made in connection with plea negotiations, held that the appellant's statement was properly admitted since appellant was not under arrest at the time that he made his statement and "[t]he Commonwealth neither compelled the appellant to come forward nor exhibited a willingness to enter into plea negotiations with him." *Id.* at 801. The *Calloway* Court held that the appellant's statement was admissible as it was "simply unsolicited [and] unilateral[,]" and thus, "appellant could not have had a reasonable subjective expectancy that his statements were made in regard to a plea negotiation." *Id.*

¶ 16 In *Commonwealth v. Wolf,* 353 Pa.Super. 483, 510 A.2d 764 (1986), the appellant, a suspect in a rape investigation, walked into a police station and informed the investigating officer that he was under arrest for an unrelated crime and would like to admit to his involvement in the

---

7. *See U.S. v. Robertson,* 582 F.2d 1356, 1366 (5th Cir.1978), *superseded by statute,* Fed. R.Evid. 410, *as recognized in U.S. v. Stein,* 2005 WL 1377851, *7, 2005 U.S. Dist. LEXIS 11141, *21 (E.D.Pa.2005).

rape, if the officer would offer appellant "a deal." *Id.* at 767. The officer informed the appellant that he was unable to make appellant any offer as plea negotiations are the province of the District Attorney. *Id.* The appellant nonetheless confessed his involvement in the rape to the officer. *Id.*

¶ 17 The *Wolf* Court, holding that the lower court did not err in declining to suppress appellant's inculpatory statement to the investigating officer, discussed *Calloway,* stating that

[w]e read *Calloway* to condone the admission of any offer, **whether it be made to a police officer or to an assistant district attorney handling the case, provided** the Commonwealth showed no interest in participating in such discussions and the statements uttered were voluntary and unsolicited.

*Id.* (emphasis added). The *Wolf* Court held that the appellant's statement was admissible under the *Calloway* framework, as it was not made in connection with plea negotiations and "at no time did the accused point to evidence of any 'interest' on the part of the Commonwealth to engage in any type of negotiations." *Id.* However, the *Wolf* Court further held that "[if] the Commonwealth **or a representative** of the authorities had initiated the inquiry, or shown an interest in resolving the case short of trial, we would not hesitate to protect the accused's actions." *Id.* (emphasis added).

¶ 18 However, in *Wolf,* former President Judge Del Sole of this Court authored a dissenting opinion in which he concluded that the majority erred in determining that the appellant's statement was not made in connection with plea negotiations. *Id.* at 767–69. Judge Del Sole, in reaching this conclusion, opined that significantly, the appellant in *Wolf,* unlike the appellant in *Calloway,* was under arrest at the time he made his inculpatory statement, albeit on an unrelated charge. *Id.* at 768–69. Similarly, in the instant case, Stutler was under arrest and in police custody at the time he made his inculpatory statement regarding the robbery of See Mor's Grill, albeit on a charge unrelated to the robbery.

¶ 19 Here, in deciding whether or not the trial court erred in admitting Stutler's September 19, 2006 statement pursuant to Rule 410(a)(4), we must first determine whether the statement was made in connection with plea negotiations. *See Calloway,* 459 A.2d at 800. Upon review of the record, we conclude that at the time Stutler made his statement to Trooper Garlick, Stutler "exhibited an actual subjective expectation to negotiate a plea." *Id.* at 800–01. We also conclude that Stutler's "expectation [that he was engaged in plea discussions with the troopers on September 19, 2006] was reasonable given the totality of the objective circumstances." *Id.* at 801.

¶ 20 Here, the trial court opined that it was "not privy to [Stutler's] actual subjective expectation as to whether or not he actually intended to negotiate a plea at the time of the [September 19, 2006] discussion." Trial Court Opinion, 3/19/08, at 14. However, Trooper Garlick stated in his PSP Report that Stutler, when asked on August 30, 2006, about cooperating with the Commonwealth, informed the troopers that he "would be willing to cooperate with the Commonwealth if he would receive judicial consideration for his cooperation." Docket No. 5, PSP Report at 10. Subsequently, on September 19, 2006, after Trooper Garlick communicated to Stutler the offer of county time that DA Vernon had expressed to Trooper Krofcheck, Stutler responded that he was interested in cooperating with the Commonwealth. He then gave a statement fully confessing to his involvement in the incident at See

Mor's Grill. Both Stutler's refusal to cooperate with the Commonwealth until he received leniency and Trooper Garlick's communication to Stutler that DA Vernon had extended an offer of county time in exchange for Stutler's cooperation support our conclusion that Stutler did, in fact, exhibit a "reasonable subjective expectancy that his statements were made in regard to a plea negotiation." *Calloway*, 459 A.2d at 801.

¶ 21 Moreover, we note that unlike the situation presented in *Calloway* and *Wolf*, Stutler's inculpatory statement to Trooper Garlick was neither voluntary nor unsolicited. *See Calloway*, 459 A.2d at 801; *Wolf*, 510 A.2d at 767. The record reflects that at the time Stutler gave his statement to Trooper Garlick, Stutler was under arrest, albeit on a charge unrelated to the November 23, 2005 incident at See Mor's Grill, and Stutler made his statement in response to DA Vernon's offer of county time for his cooperation.[8] *See Calloway*, 459 A.2d at 801 (stating that the appellant's inculpatory statement to police in *Calloway* was admissible under Rule 410(a)(4) because "[t]he Commonwealth

neither compelled appellant to come forward nor exhibited a willingness to enter into plea negotiations with him."). Here, we observe that the Commonwealth did, in fact, "compel[ ] [Stutler] to come forward [and] exhibited a willingness to enter into plea negotiations with him" as DA Vernon expressly authorized Trooper Krofcheck to communicate the plea bargain offer to Stutler in exchange for Stutler's cooperation. *Id.* Also, Stutler maintains that absent DA Vernon's offer, he would not have provided his statement to the troopers. Brief for Appellant at 9–10.

¶ 22 Accordingly, we conclude that Stutler's September 19, 2006 statement was made during plea negotiations and that pursuant to Rule 410(a)(4), the lower court erred in admitting it into evidence.[9] We further hold that the fact that neither DA Vernon nor any other attorney on behalf of the prosecuting authority was physically present at the time that Trooper Garlick communicated the offer of county time to Stutler does not alter our conclusion that Stutler's statement was made in connection with plea negotiations, falling within

---

8. The lower court, in support of its determination that Stutler's statement was not made in connection with plea negotiations, places significant emphasis on the fact that "[t]he criminal complaint [against Stutler regarding the incident at See Mor's Grill] was filed by Trooper Garlick ... some four months following the [September 19, 2006] interview." Trial Court Opinion, 3/19/08, at 14. However, this fact does not effect our conclusion that Stutler's statement was made in the course of plea negotiations since Trooper Garlick, on behalf of DA Vernon, initially made the plea bargain offer and Stutler was in police custody at the time. Indeed, counsel for the Commonwealth at Stutler's trial conceded that "[Stutler] wasn't charged until after th[e September 19, 2006] statement was given, *but the statement itself and the transcript does mention a specific plea bargain that was being offered to [Stutler] at the time.*" N.T., 7/9–10/07, at 14 (emphasis added).

9. Although Stutler waived his *Miranda* rights prior to giving his statement, this does not effect our conclusion that this statement was, in fact, made in connection with a plea bargain. Also, regarding Stutler's waiver, Trooper Garlick testified that Stutler had responded to the trooper's questioning that no promises had been made to him in connection with his decision to waive his rights and give a statement, *other than* the plea bargain offer that Trooper Garlick had communicated to Stutler on behalf of DA Vernon. *See* N.T., 7/9–10/07, at 31. Therefore, since Stutler's statement is inadmissible pursuant to Rule 410(a)(4), we cannot agree with the lower court that "[a]ny expectation that [Stutler] may have had [that his inculpatory statement would not be used against him] certainly had been dispelled by the [*Miranda* ] warnings that were provided to him before he made the statement to the police." Trial Court Opinion, 3/19/08, at 15.

the purview of Rule 410(a)(4). We note that our decision today is also consistent with certain federal courts that have considered the issue [10] as well as other authority commenting on the admissibility of an accused's statements to police who have been authorized by the prosecuting authority to communicate to the accused a plea bargain offer.[11]

¶ 23 Although we conclude that the admission of Stutler's September 19, 2006 statement was error, a new trial would not be required if the trial court's error was harmless and could not have contributed to the verdict. *Commonwealth v. McCloskey*, 441 Pa.Super. 116, 656 A.2d 1369, 1377 (1995). Trial court error will be considered harmless where

> (1) the error did not prejudice the defendant or the prejudice was *de minimis;* or (2) the erroneously admitted evidence was merely cumulative of other, untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant

by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Miles*, 846 A.2d 132, 137–38 (Pa.Super.2004) (*en banc*) (citation omitted).

¶ 24 Here, our review of the record reveals that, apart from Stutler's inculpatory statement, the evidence presented of Stutler's guilt consisted entirely of circumstantial evidence. Specifically, the Commonwealth at trial called Lilley, who testified that on the night of November 22, 2005, he loaned his father's pickup truck to Stutler for the night in exchange for a quantity of crack cocaine. *See* N.T., 7/9–10/07, at 66. Police investigating the incident at See Mor's Grill found Lilley's father's pickup truck at the scene of the crime. The Commonwealth also called Shannon Parkinson, who testified that Stutler, in the early morning hours of November 23, 2005, telephoned her and asked her to lie to the police and state that Lilley had been sleeping on her couch and that Lilley's truck was stolen from her driveway. *Id.* at 73–74. Further, the Commonwealth called as a witness Shelly Walker, the mother of Stutler's former girlfriend, who

---

**10.** *See U.S. v. Grant*, 622 F.2d 308, 313 (8th Cir.1980) (holding that plea bargaining negotiations under Federal Rule of Evidence 410(4), which is essentially identical to Pa. R.E. 410(a)(4), generally do not include discussions between law enforcement officials and an accused, *except* "in circumstances where the law enforcement official is acting with express authority from a government attorney. Without such an exception, government attorneys might attempt to avoid the operation of the rules by authorizing law enforcement officials to conduct plea negotiations."); *see also U.S. v. Swidan*, 689 F.Supp. 726, 728 (E.D.Mich.1988) (holding that the accused's inculpatory statements to a law enforcement agent whom the accused reasonably believed to be authorized by the prosecutor to enter into a plea bargain were inadmissible under Fed.R.Evid. 410(4), as "limiting the rule's application only to prose-

cuting attorneys contravenes the rule's purpose of encouraging plea discussions.").

**11.** *See* Edward D. Ohlbaum, ***Ohlbaum on the Pennsylvania Rules of Evidence*** § 410.06 (2007–2008 ed.) (stating that although "statements made by a defendant to police officers or other law enforcement agents do not fall within the protection of ... Rule [410(a)(4),] [w]here a law enforcement agent is expressly authorized to engage in plea discussions, basic fairness dictates that subsection (a)(4) apply."); *see also* ***West's Pennsylvania Practice***, Evidence § 410–1 (3d ed.) (stating that although Rule 410(a)(4) "applies only to statements made to attorneys[,] ... the rule could extend to a law enforcement officer acting as an authorized agent for the prosecuting attorney, [if] the defendant seeking to exclude the statement ... establish[es] the existence of the agency relationship.").

testified that Stutler, in December 2005, stated in her presence that he had been involved in the theft of an ATM machine. *Id.* at 79–81. Last, at trial the Commonwealth called one eyewitness, John Bevans, who was in close enough proximity to the masked men at See Mor's Grill on November 23, 2005, to allow for an identification. However, Bevans testified that he could discern only that one of the two masked men was Caucasian. *Id.* at 52.

¶ 25 We conclude that the above-mentioned properly admitted circumstantial evidence was not so overwhelming that it outweighed the prejudice resulting from the compelling but erroneously admitted evidence of Stutler's inculpatory statement. Although the circumstantial evidence pointed to Stutler, there was no specific eyewitness identification of him. In addition, Stutler's defense counsel contradicted, by cross-examination, some of the aforementioned evidence and attacked the credibility of some of the Commonwealth witnesses. "If honest, fair-minded jurors might very well have brought in not guilty verdicts, an error cannot be harmless on the basis of overwhelming evidence." *Commonwealth v. McGrogan,* 523 Pa. 614, 568 A.2d 924, 931 (1990) (internal citations omitted). In the instant case, we determine that "honest, fair-minded jurors might very well have brought in not guilty verdicts" in Stutler's trial had his statement not been admitted. *See id.*

¶ 26 For the reasons discussed above, we conclude that the error committed by the lower court in this case was not harmless error. First, the admission of Stutler's inculpatory statement prejudiced him, and the prejudice was not *de minimis.* *See Miles,* 846 A.2d at 137. Second, Stutler's statement was not "merely cumulative of other, untainted evidence which was substantially similar to the erroneously admitted evidence." *Id.* at 138. Finally, we cannot conclude that "the properly admitted and uncontradicted evidence" of Stutler's guilt "was so overwhelming and the prejudicial effect of the error [in admitting Stutler's statement] was so insignificant by comparison that the error could not have contributed to the verdict." *Id.*

¶ 27 Because Stutler's statement made in connection with a plea bargain was improperly admitted pursuant to Rule 410(a)(4) and was prejudicial to him, he is entitled to a new trial. Thus, we need not decide his sufficiency challenge in this appeal.

¶ 28 Judgment of sentence vacated; case remanded for new trial in accordance with this Opinion; Superior Court jurisdiction relinquished.